[No. 26803. Department Two. January 31, 1938.]

WILLIAM J. JONES *et al., Respondents,* v. THE DEPARTMENT OF LABOR & INDUSTRIES, *Appellant.*[1]

The *Attorney General* and *Browder Brown, Assistant,* for appellant.

*James M. Ballard,* for respondents.

[1]Reported in 75 P. (2d) 1003.

BEALS, J.—Joseph E. Zalusky, a workman within the protection of the industrial insurance act, suffered an injury in the course of his employmênt August 17, 1935. Mr. Zalusky was using a wrench in an endeavor to loosen a rusty bolt, and in the course of his attempt the wrench slipped and struck him in the face, inflicting a cut on his lip two inches long on the outside and an inch longer on the inside of his mouth. A number of sutures were required to close the wound.

Two days following the accident, the workman signed a report thereof, which did not reach the department until a month had elapsed. Meanwhile, Mr. Zalusky was receiving treatment from his own physician, Dr. William J. Jones, both for the cut lip and for a bad intestinal condition. Prior to the receipt of the claim by the department, Dr. Jones discussed the case with Dr. H. Eugene Allen, the department's chief medical adviser.

After the receipt of the accident report, September 16th, the department authorized Dr. Robert F. Foster, a physician in private practice and not an employee of the department, to examine the injured workman. October 2d, Dr. Foster examined Mr. Zalusky at Saint Luke's hospital, to which he had been admitted sometime prior to the examination, and where he was being treated by Dr. Jones. Dr. Foster reported that, in his opinion, the man was suffering from some form of enterocolitis, and stated that he had asked that certain tests for typhoid and other diseases be repeated. The doctor also stated that, while the patient was "gravely ill," in his opinion the case was one for medicine and not related to injury. In closing the report, Dr. Foster stated that Dr. Jones had expressed his intention of operating on the workman, and that Dr. Foster had told Dr. Jones that, while personally he would be interested in the findings, he had no authority from the

department to authorize any operation, and that, in his opinion, surgery would be attended by rather grave risks.

October 5th, Dr. Jones operated on Mr. Zalusky, who survived the operation only four days. Claims were filed with the department by Saint Luke's hospital, Dr. Jones, and by Johnson & Sons, a corporation, undertakers who attended to Mr. Zalusky's funeral. The department, while paying the bill of Dr. Senecal, who had assisted Dr. Jones in closing the wound on Mr. Zalusky's lip, refused to pay the other claims, and on appeal the joint board affirmed the supervisor. The claimants appealed from this ruling to the superior court for King county, and a trial before the court, sitting without a jury, resulted in the entry of findings of fact and conclusions of law in favor of the hospital and of Dr. Jones, whereupon judgment was entered in favor of these two claimants and against Johnson & Sons, whose claim was denied. From the judgment, in so far as the same was entered against the department, the latter has appealed, assigning error upon the award of recovery to the claimants.

Appellant, prior to the entry of judgment, conceded that Dr. Jones was entitled to compensation for services rendered in treating the workman's injured lip, but contended before the superior court, and contends here, that the doctor's compensation should be limited to treatment of the particular injury referred to.

The trial court, after finding that the workman received the injury to his lip as the result of the slipping of the wrench, also found that "at the same time the wrench, or his elbow, struck him in the abdomen near the umbilicus." Findings three and four entered by the trial court read as follows:

"III. That Joseph E. Zalusky never returned to his employment after said injury; he lost weight and grew

steadily worse until he was admitted to the St. Luke's Hospital on the 7th day of September, 1935. That after his admission to said hospital his condition grew steadily worse, and he lost additional weight; that the patient complained more and more of his stomach condition; that the respondent through its medical advisor approved of a gastro-intestinal study for the patient. That thereafter on the 5th day of October 1935 appellant, Dr. William J. Jones, performed an abdominal operation upon the said patient, and found a condition then diagnosed as ulcerated colitis. That respondent and his medical advisor, Dr. Robert F. Foster, appeared at the operating room on the said fifth day of October, 1935, just as respondent [sic] Dr. William J. Jones was finishing the operation upon said patient.

"IV. That no diagnosis was made of the injuries or purported injuries of said patient until the operation on the 5th day of October, 1935, and that the diagnosis made on said date show that the patient's abdominal condition was not due to trauma."

September 10th, Dr. Allen made a written memorandum of his talk with Dr. Jones the previous day, in which Dr. Allen noted that Dr. Jones stated that the workman, when he fell, struck himself across the upper abdomen, and that since that time he had suffered from pain in the abdomen and had lost twenty-four pounds. Dr. Allen also noted that he had authorized, subject to approval of the claim, an X-ray gastro-intestinal study. At the time of this interview between the two doctors, the injured man was in Saint Luke's hospital, which fact Dr. Allen noted. Dr. Foster in his report stated that Mr. Zalusky had told him that, in addition to the cut on his lip, when the wrench had slipped his elbows came down, forcibly striking him in the pit of the stomach, and that he could not work thereafter because of pain through the abdomen and listlessness. The workman also said that the pain had gradually become worse, that he had lost his appetite,

and during the first two weeks had lost fifteen pounds in weight. In the first report of the accident, the claimant, in describing the accident, stated:

"While loosening a nut on a fire escape wrench slipped and struck me in the mouth and also in the stomach. My lip was cut through and I felt very weak in the pit of my stomach."

Appellant challenges the findings of fact as inconsistent, in that the doctor and the hospital are allowed recovery, while the undertaker is not. There is no real inconsistency between the findings. The court found that the workman was injured during the course of his employment, which fact was admitted by the department. The trial court was evidently of the opinion that, until after the operation which Dr. Jones performed, it was impossible to definitely determine whether the abdominal trouble from which Mr. Zalusky was suffering was or was not due to the injury. The court, being of the opinion that this trouble was not due to the injury, ruled that the undertaker was not entitled to maintain any claim against the department, but that the hospital and the doctor who had attended the injured man were entitled to payment of their claims.

Mr. Zalusky was for some time treated by Dr. Jones at the latter's office. The injured man's condition becoming steadily worse, he was sent to the hospital September 7th, where he remained until his death. Dr. Jones promptly reported the hospitalization to Dr. Allen, and when Dr. Foster, acting under instructions from the department, visited the patient at the hospital, Dr. Foster asked that certain tests be made, and manifestly approved the hospitalization of the case. It seems that, for some reason, the claim was slow in reaching the department, but it does not appear that this delay was due to any neglect on the part of the

claimant or of the doctor. The workman, beyond any question, had been hurt while in the course of his employment.

We are satisfied, as was the trial court, that, at the time of the injury, the workman received a blow in the abdomen. It is also clear that, from this time, his physical condition became steadily worse, and that hospitalization became necessary. At that time, no one could tell whether or not the dangerous abdominal condition was the result of the accident. It may well be that, as a result of the accident, some preexisting bad condition was rendered acute. In any event, the workman needed care, which he received apparently with the approval of the department. Certainly, Dr. Foster's report indicates that he approved what had been done up to that time, and desired certain things done which could be accomplished only in a hospital. Clearly, the hospital bill should be paid by the department.

As to the claims of the doctors, the department paid Dr. Senecal, who assisted Dr. Jones in treating the injured lip, and paid Dr. Tucker twenty-five dollars for making laboratory examinations at the hospital. The department admits its responsibility to Dr. Jones for services rendered in treating Mr. Zalusky's lip, but denies all other responsibility to the doctor. We are convinced that the workman did complain of an abdominal blow received at the time of the accident, and that, as Mr. Zalusky was Dr. Jones' patient, it became the doctor's duty to care for him, and as the man was undoubtedly suffering from some severe abdominal trouble, to treat him therefor to the best of his ability. Dr. Jones informed Dr. Allen, an officer of the department, of what had been done. Dr. Foster approved all the steps which had been taken up to the time of his visit to the patient.

While in the light of after events it may now be said that Mr. Zalusky did not die as the result of an abdominal condition caused by trauma, it cannot be positively stated that the blow did not cause the pre-existing condition to become acute. The workman had been employed fairly continuously up to the time of the accident, and after that was unable to work at all. Certainly, his condition immediately changed for the worse. Dr. Foster reported that

" . . . the patient is in such a serious condition that one hesitates to subject him to another barium enema or sigmoidoscopic examination at the present time,"

and while the doctor stated that, in his opinion, surgery would be dangerous, it cannot, from the record, be held that Dr. Jones was not justified in operating in an attempt to do something to save the patient's life. The continuity of what Dr. Jones did is too strong to break at any particular point. Had the operation demonstrated that Mr. Zalusky's condition was the result of the accident, the doctor would, beyond question, be entitled to his compensation. It cannot be held that the operation was improper, or that the direct cause of the patient's illness could have been determined without an operation.

The judgment is affirmed.

STEINERT, C. J., BLAKE, MILLARD, and ROBINSON, JJ., concur.